**Glenn MONROIG, et al., Plaintiffs,**

v.

**RMM RECORDS & VIDEO CORP., et al., Defendants.**

**No. Civ. 96–2764 SEC JA.**

United States District Court, D. Puerto Rico.

June 8, 2000.

Alberto N. Balzac–Colom, Alfredo Castellanos–Bayouth, Hato Rey, PR, Kenneth C. Suria–Rivera, San Juan, PR, for defendants.

Jose A. Hernandez–Mayoral, Juan H. Saavedra–Castro, San Juan, PR, for plaintiffs.

---

## OPINION AND ORDER

ARENAS, United States Magistrate Judge.

On May 15, 2000, defendants RMM Records & Video Corp., RMM Filmworks, and Ralph Mercado (hereinafter "RMM") moved to preclude co-plaintiff Glenn Monroig's written memorialization of an oral transfer of ownership of copyrights for the song "Yo Soy" to co-plaintiff Mamoku Publishing, Inc. They based this motion on (1) the facial irregularities of the documents presented and (2) co-plaintiffs failure to comply with the general provisions for discovery under Federal Rule of Civil Procedure 26.

### (1) Documents' Facial Irregularities

Since the filing of the complaint on November 21, 1997, plaintiffs Glenn Monroig and Mamoku Publishing, Inc., had failed to produced a written instrument of conveyance documenting co-plaintiff Monroig's oral transfer of ownership rights to co-plaintiff Mamoku Publishing, Inc., although such document had been requested by the defendant RMM. On May 10, 2000, five days before trial, the plaintiffs produced a document recording such transfer, dated as of October 28, 1982, and a document for "Consent to Action in Lieu of Meeting," through which the corporation accepted the transfer, dated as of May, 2000.

The defendants claim that, under 17 U.S.C. § 204(a),[1] and as supported by *Staggers v. Real Authentic Sound*, 77 F.Supp.2d 57 (D.D.C.1999), and *Konigsberg Int'l, Inc. v. Rice*, 16 F.3d 355 (9th Cir.1994), transfer of copyright ownership is not valid unless evidenced by a written instrument of conveyance, signed by the owner of the rights or such owner's duly authorized agent. Thus, they appear to contend that co-plaintiff Mamoku Publishing, Inc., cannot prove it is the owner of the copyright for the song "Yo Soy."

The defendants further claim that such documents should be excluded based on irregularities of their documented dates, particularly since at least one of them predates back to October 28, 1982, and on purported irregularities in the documents' printing and signatures. The defendants thus characterize the production of these documents as in "bad faith" and the documents themselves as highly questionable and irregular.

Based upon these contentions, there being no proper registration of the copyright's ownership, defendant RMM insists plaintiffs are not entitled to initiate legal action regarding this song, as they cannot prove copyright ownership. In conclusion, the defendants insist that this court lack subject matter jurisdiction under the copyright law, 17 U.S.C. § 101 *et seq.*

The defendants' reliance on the interpretations of 17 U.S.C. § 204(a) presented in *Staggers* and *Konigsberg* is suspect.

In *Staggers*, the plaintiff, a musician, sued the defendant record company for copyright

---

1. Title 17 U.S.C. § 204(a) reads thus:

    A transfer of copyright ownership, other than by operation of law, is not valid unless an instrument of conveyance, or a note or memorandum of the transfer, is in writing and signed by owner of the rights conveyed or such owner's duly authorized agent.

infringement. The court stated that, pursuant to 17 U.S.C. § 201(a),[2] initial ownership of the materials there in question vested in their author, and that in order for a transfer of copyright ownership from the said author to the plaintiff to have legal validity said transfer must be in writing. *Staggers v. Real Authentic Sound,* 77 F.Supp.2d at 68. The *Staggers* court so insisted, because the statutory protection given to copyrights is limited to the exclusive rights held by the copyright owner. *Id.* at 61 (citing to *Stewart v. Abend,* 495 U.S. 207, 110 S.Ct. 1750, 109 L.Ed.2d 184 (1990)). Thus, in a copyright infringement case, for a plaintiff to be entitled to relief, he must first prove that he has standing to sue; that is, he must prove that he is the rightful owner of the copyright at issue.

However, *Staggers* can be easily distinguished from the present controversy. In *Staggers,* although the lone plaintiff claimed that the defendant had knowingly infringed his copyrights, he could not present any supporting evidence to the court of the oral transfer of copyright ownership from the non-party author to himself or of the non-party author's transfer to the plaintiff of all of the composition's publishing rights. *Staggers v. Real Authentic Sound,* 77 F.Supp.2d at 67–68. For that reason, because he could not present evidence to confirm him as a real party in interest, as mandated by Federal Rule of Civil Procedure 17(a), the court accepted the defendant's argument that the plaintiff was not entitled to institute legal action. *Staggers v. Real Authentic Sound,* 77 F.Supp.2d at 67–68.

In the present case, co-plaintiff, Glenn Monroig, author and thus original copyright owner, and Mamoku Publishing, Inc., subsequent copyright assignee, have jointly instituted this action, to assert their property rights for the song "Yo Soy." As evidenced by their motion to preclude, defendants have not questioned co-plaintiff Monroig's authorship and concurrent initial copyright ownership for said song. Thus, they have not questioned co-plaintiff Monroig's legal ability

to transfer the copyright to another or his legal ability to present a valid copyright claim to the song. Even if co-plaintiff Mamoku Publishing, Inc., did not have a legally cognizable claim to institute litigation, the plaintiff may be able to assert a joint right to relief, since, on its face, the motion does not appear to contend that at least one of the parties (co-plaintiff Monroig) might in fact be a "real party in interest."

The issue in *Konigsberg* can also be distinguished from the case at hand. In *Konigsberg,* the plaintiff movie producers alleged ownership of the defendant author's work and exclusive motion picture rights. *Konigsberg Int'l, Inc. v. Rice,* 16 F.3d at 357. Plaintiffs filed a motion for declaratory judgment based on a letter from the defendant author to the plaintiff movie producers. *Id.* The *Konigsberg* court stated that, as interpreted by the Ninth Circuit in *Effects Associates, Inc. v. Cohen ("Effects II"),* 908 F.2d 555 (9th Cir.1990), the writing requirement serves to protect the author from inadvertently transferring his copyright and that it serves to force parties to negotiate with precision exactly what rights are being transferred. *Konigsberg Int'l, Inc. v. Rice,* 16 F.3d at 356–57. The writing thus serves to reflect the particular understanding of the parties as reached through negotiations.

The writing here in question reflects the negotiations between the plaintiffs, Glenn Monroig and Mamoku Publishing, Inc., for the protection of the author and original copyright owner, co-plaintiff Monroig. Thus, a question as to the protection afforded to or withheld from co-plaintiff Monroig by such an agreement and commemorating writing would not immediately concern defendant RMM. The defendants would not in such a controversy appear to have been envisioned as potential "real parties in interest" by 17 U.S.C. § 204(a).

However, *Konigsberg*'s discussion of 17 U.S.C. § 204(a), emphasizes that the title has been interpreted, by both the Ninth and Seventh Circuit, as an instrument to "enhance predictability and certainty of owner-

---

**2.** Title 17 U.S.C. § 201(a) reads thus:

Copyright in a work protected under this title vests initially in the author or authors of the

work. The authors of a joint work are co-owners of copyright in the work.

ship." *Konigsberg Int'l, Inc. v. Rice,* 16 F.3d at 357. *See also Schiller & Schmidt, Inc. v. Nordisco,* 969 F.2d 410, 412 (7th Cir.1992), as quoted in *Konigsberg Int'l, Inc. v. Rice,* 16 F.3d, at 357. *Schiller* interpreted the purpose of the requirement of a written statement of transfer for ownership of works "for hire" as dual, serving both as protection to rightful copyright owners and as a way of making copyright ownership clear and definite, so as to make it more "readily marketable."

Even if plaintiffs failed to make the copyright ownership of the song "Yo Soy" "readily marketable," one of the unexpressed purposes of 17 U.S.C. § 101 *et seq.,* envisioned by the Seventh Circuit in *Schiller,* this would not allow defendants to raise the issue as a defense for copyright infringement.

Plaintiffs properly allege that defendants' argument that the causes of action under the United States Copyright Act, 17 U.S.C. § 101 *et seq.,* should be dismissed on the grounds that the assignment of plaintiff Monroig's copyrights to co-plaintiff Mamoku Publishing, Inc., was not in writing lacks merit.

■ As held in plaintiffs' supporting authority, where the original copyright owner and transferee of copyright (in this case, Mamoku Publishing, Inc., is characterized as an equivalent "assignee") agree as to the ownership of the copyright or join as plaintiffs in an infringement suit, the alleged infringer is not allowed to invoke Title 17's writing requirement for copyright transfers to avoid suit. *See Imperial Residential Design, Inc. v. Palms Dev. Group,* 70 F.3d 96, 99 (11th Cir.1995). *Cf. Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d 1529, 1532–33 (11th Cir.1994).

■ In *Imperial,* plaintiff designer had orally transferred all his rights in one of his designs to the co-plaintiff housing development company in October 1988. Such oral transfer had left both of these parties with the belief that the plaintiff company was the sole proprietor of said design. *Imperial Residential Design, Inc. v. Palms Dev. Group,* 70 F.3d at 97. Two years later, finding a competing company building and marketing homes with a "strikingly similar"

design, the plaintiff company and designer signed a written agreement memorializing their original transfer, after which they filed a complaint for copyright infringement against the competing company. Due to technical inadequacy on the drafting of this written agreement, which failed to reflect with precision exactly what rights had been transferred and thus prevented the plaintiff company to assert standing to sue for copyright infringement, another written instrument was executed and accepted as legally valid by the court. In its analysis, the *Imperial* court interpreted the statute as one designed to resolve disputes between copyright owners and transferees and to protect copyright holders from other parties' fraudulent claims to oral licenses or copyright ownership. *Id.* at 99. It further held that 17 U.S.C. § 204(a) can be satisfied by a written document memorializing or ratifying a prior oral assignment. *Imperial Residential Design, Inc. v. Palms Dev. Group,* 70 F.3d at 99. *See also Magnuson v. Video Yesteryear,* 85 F.3d 1424, 1428–29 (9th Cir.1996); *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d at 1532–33; *Valente–Kritzer Video v. Pinckney,* 881 F.2d 772, 775 (9th Cir.1989).

Moreover, in another case relied upon by the plaintiffs, the court held that later written documentation, signed by both parties, memorializing an oral agreement between a copyright owner and a transferee cured defects in standing, although it was executed after the suit was filed. *Great Southern Homes v. Johnson & Thompson Realtors,* 797 F.Supp. 609, 611–12 (M.D.Tenn.1992). *See also Eden Toys, Inc. v. Florelee Undergarment Co.,* 697 F.2d 27, 36 (2nd Cir.1982); *Balsamo/Olson Group, Inc. v. Bradley Place Ltd. Partnership,* 966 F.Supp. 757, 763 (C.D.Ill.1996).

Ample precedent supports that predated memorializing written documentation, as the plaintiffs have produced, may validate an earlier oral agreement retroactively and satisfy statutory requirements. *A fortiori,* the writing provision of the Copyright Act may not be invoked by an alleged infringer as a defense to avoid suit for copyright infringement. This is especially true in cases as the present one, where both the original

copyright owner and transferee have joined together as plaintiffs. The defendants as infringers lack standing to support their challenge of the transfer.

(2) Plaintiffs failure to comply with the general provisions for discovery under Federal Rule Civil Procedure 26.

The purpose of discovery is to make information relevant to the issues of the case available to the litigants so that they can ascertain pertinent facts and narrow issues. This disclosure attempts to aid the parties to prepare for trial or to make informed decisions about possible settlement alternatives. Federal Rules of Civil Procedure 26(a)(1)(B),[3] 26(a)(1)(C), and 26(b)(1).[4] *See Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The Federal Rules of Civil Procedure pertaining to the discovery process thus must be applied in a manner congruous to the achievement of that objective.

The defendants in the present case sought to preclude co-plaintiff Glenn Monroig's written memorialization of an oral transfer of ownership of copyrights for the song "Yo Soy" to co-plaintiff Mamoku Publishing, Inc. In addition, they sought from the court that pursuant to its exclusion, it should grant a partial dismissal of co-plaintiff Mamoku Publishing, Inc., as party to the litigation based on alleged general failures to comply with the provisions of Federal Rule of Civil Procedure 26. Defendants argue that because there was allegedly no proper registration of the copyright ownership by co-plaintiff Mamoku Publishing, Inc., this co-plaintiff is not entitled to institute legal action regarding the composition "Yo Soy," and that thus the court lacks subject matter jurisdiction under copyright law 17 U.S.C. § 101 *et seq.*

■ The burden concerning the necessity and propriety of both the motion to preclude and the motion for partial dismissal lies on the moving party, which must show a particular and legally recognizable need for such actions. *Great West Life Assur. Co. v. Levithan,* 152 F.R.D. 494, 496 (E.D.Pa.1994). The defendants raise these issues as tactical defenses. As established by abundant precedent, however, the defendants as infringers are not allowed to raise the validity of the copyright transfer between the plaintiffs as a defense for their copyright infringement. *See, e.g., Imperial Residential Design, Inc. v. Palms Dev. Group,* 70 F.3d at 99; *Arthur Rutenberg Homes, Inc. v. Drew Homes, Inc.,* 29 F.3d at 1532; *Schiller & Schmidt, Inc. v. Nordisco,* 969 F.2d at 412. Thus, the defendants would not have been any more prejudiced by the non-disclosure of the agreement. Therefore, their claims under Rule 26 lack merit.

---

**3.** Federal Rules of Civil Procedure 26(a)(1)(B) and 26(a)(1)(C) read thus:

> (a) Required Disclosures; Methods to Discover Additional Matter.
> (1) Initial Disclosures. Except in categories of proceeding specified in subparagraph (E) (*omitted*), or to the extent otherwise stipulated or directed by order, a party shall, without awaiting a discovery request, provide to other parties:
> . . .
> (B) a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody, or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment;
> (C) a computation of any category of damages claimed by the disclosing party, making available for inspection and copying as under Rule 34 the documents or other evidentiary material, not privileged or protected from disclosure, on which such computation is based, including materials bearing on the nature and extent of injuries suffered.

**4.** Federal Rule Civil Procedure 26(b)(1) reads thus:

> (b) Discovery Scope and Limits. Unless otherwise limited by order of the court in accordance with these rules, the scope of discovery is as follows:
> (1) In General. Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of the party seeking discovery or to the claim or defense of any party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause shown, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence. All discovery is subject to the limitations imposed by subdivision (b)(2)(i), (ii), and (iii).

Defendants' motion to preclude plaintiffs' use at trial of the written memorialization of their oral transfer of ownership of the copyright for the song "Yo Soy" is denied, as well as is the motion for partial dismissal.

**SO ORDERED.**

## ORDER AND JUDGMENT GRANTING INJUNCTIVE RELIEF

Trial by jury in this case having been had, and in light of the verdict and the judgment entered in this case, and the testimony and the evidence submitted by both sides at trial; and the court having concluded that plaintiff Mamoku, Inc., doing business as Mamoku Publishing ("Mamoku") is entitled to permanent injunctive relief as a matter of law pursuant to 17 U.S.C. § 503, as requested in the relief prayed for in the Amended Complaint, to the extent that is hereinafter granted, it is

ORDERED, ADJUDGED AND DE-CREED:

1. That defendants and their agents, servants, employees, representatives, and all other firms, divisions or corporations in active concert or participation with said defendants, or with any of the foregoing, be and hereby are permanently enjoined:

(a) from engaging in any further acts in violation of the copyright laws that directly and/or indirectly affect Mamoku's copyright in the song "Yo Soy";

(b) from directly or indirectly infringing Mamoku's copyright in "Yo Soy" or continuing to market, offer, sell, dispose of, license, transfer, display, perform, advertise, reproduce, develop or manufacture any works derived or copies of "Yo Soy" or to participate or assist in any such activity.

2. That defendants are further directed:

(a) to return to Mamoku any and all phonerecords and copies that contain the song "Yo Soy" in their possession, custody or control, and all plates, molds, matrices, masters, tapes, film negatives, or other articles by means of which such copies or phonerecords may be reproduced;

(b) to recall from all clients, distributors, wholesalers, jobbers, dealers, retailers, and all others known to defendants, any and all phonerecords and copies of any works containing Mamoku's copyrighted work "Yo Soy" in their possession, custody or control;

(c) to file with the court and serve on plaintiff, within twenty (20) days after the date of entry of this judgment and injunction, a report in writing and under oath setting forth the full name and address of each person who has used, with the authorization of defendants, the copyrighted song "Yo Soy," together with the full name and address of the owner or principal operator of each such person;

(d) to deliver under oath, to be impounded and destroyed all phonerecords and copies of any work that contain the song "Yo Soy";

(e) to file with the court and to serve on Mamoku, through their counsel of record, within 30 days after service of this court's order, a report in writing under oath setting forth in detail the manner and form in which defendants have complied with the injunctive provisions of this judgment.